**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**MARK THOMPSON, JR.,**                     **CASE NO. 2:07-cv-0051**
                                            **JUDGE SARGUS**
            **Petitioner,**                 **MAGISTRATE JUDGE KEMP**

**v.**

**WARDEN, BELMONT CORRECTIONAL
      INSTITUTION,**

            **Respondent.**

<u>**REPORT AND RECOMMENDATION**</u>

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's return of writ, petitioner's traverse, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus conditionally be **GRANTED**, that petitioner's sentence be **VACATED**, and that he be released from incarceration unless the State of Ohio reinstates his appeal within sixty (60) days.

**PROCEDURAL HISTORY**

The Ohio Seventh District Court of Appeals summarized the facts and procedural history of this case as follows:

> On the morning of December 24, 2004, Sabrina Barnett started her car and went back inside her residence in Steubenville, Ohio. When she returned to her car, there was a person in the driver's seat wearing a hooded jacket and a ski mask. As she

tried to open the locked passenger door, the thief started backing away. She then yelled and banged on the hood to no avail.

A neighbor, Diane Sizemore, witnessed Ms. Barnett's struggle to reclaim her car. Ms. Sizemore was just about to enter her own car when the stolen car started coming at her. She jumped to the back of her car just as the thief smashed the stolen car into her car. The thief then drove off in the stolen car. Within minutes, the police caught the thief, who turned out to be appellant.

Appellant's misdemeanor crimes of failure to control and hit and run were dealt with in the municipal court. Appellant was indicted in case number 05CR4 for theft of a motor vehicle in violation R.C. 2913.02(A)(1), a fourth degree felony. On April 7, 2005, a jury convicted him as charged.

The sentencing hearing proceeded on this case and case number 04CR210, which involved three unrelated felonies that had been tried previously. The court sentenced appellant to the maximum sentence of eighteen months in prison for theft of a motor vehicle and ordered this sentence to run consecutively with the sentences in 04CR210, for a total of four consecutive eighteen month sentences. Appellant filed timely notices of appeal in both cases. The appeal in this case resulted in appellate case number 05JE16, and the appeal from 04CR210 resulted in appellate case number 05JE17, which will be dealt with in a separate opinion.

*State v. Thompson*, 2005 WL 3489781 (Ohio App. 7 Dist. December 16, 2005); *Exhibit 18 to*

*Return of Writ.* Represented by new counsel, petitioner filed a timely appeal. He raised the

following assignments of error:

1. THE COURT ERRED IN ALLOWING THE STATE'S WITNESS TO OFFER UNSOLICITED COMMENTS TO THE JURY WHEN NO QUESTION WAS PENDING.

2. THE STATE ERRED BY IMPROPERLY IMPLYING THAT

THE APPELLANT HAD A CRIMINAL BACKGROUND BY ASKING THE POLICE OFFICER WITNESS IF THE DEFENDANT WAS KNOWN TO THEM.

3. THE COURT ERRED BY IMPOSING THE MAXIMUM SENTENCE AND NOT PROVIDING REASONS FOR HIS OVERLY HARSH SENTENCING UNDER THE SENTENCING FACTORS IN R.C. 2929.12.

*See id.* On December 16, 2005, the appellate court affirmed the trial court's judgment. *Id.* Petitioner did not file a timely appeal of the appellate court's decision to the Ohio Supreme Court.

As discussed above, petitioner also was indicted by the winter 2005 term of the Jefferson County grand jury on possession of crack cocaine, in violation of O.R.C. §2925.11(A), (C)(4)(b), carrying a concealed weapon, in violation of O.R.C. §2923.12(A), and receiving stolen property, in violation of O.R.C. §2913.51(A). *Exhibit 1 to Return of Writ.* Represented by counsel, petitioner proceeded to jury trial, and on March 3, 2005, was found guilty as charged. *Exhibit 5 to Return of Writ.* On April 7, 2005, petitioner was sentenced to three consecutive terms of eighteen months incarceration. Exhibit 6 to Return of Writ. Represented by new counsel, he filed a timely appeal. *Exhibit 7 to Return of Writ.* He asserted the following assignments of error:

1. Inadequate voir dire.

2. The court erred by calling attention to the defendant being held in custody in the presence of the jury and calling to the jury's attention that the court was in fear the appellant may flee.

3

3.  The State of Ohio improperly shifted the burden of proof to the appellant in his closing remarks.

4.  The court erred by imposing the maximum sentence and not providing reasons for this overly harsh sentencing under the sentencing factors in R.C. 2929.12.

*Exhibit 8 to Return of Writ.*  On December 16, 2005, the appellate court affirmed the trial court's judgment.  *Exhibit 10 to Return of Writ.*  Petitioner did not file a timely appeal to the Ohio Supreme Court.

On February 14, 2006, represented by the public defender, petitioner filed a motion for delayed appeal with the Ohio Supreme Court, which motion was granted.  *Exhibits 20 and 21 to Return of Writ.*  Petitioner initially referenced only one of his criminal cases in the motion for delayed appeal; however, he later amended the notice of appeal to include both criminal cases.  *See Exhibit 22 to Return of Writ.* He raised the following propositions of law:

1.  A defendant is entitled to minimum, concurrent sentences when no jury has found the fact needed to support a higher sentence.

2.  A trial court may not impose court appointed counsel fees unless it affirmatively finds on the record that the defendant has, or reasonably may be expected to have, the means to pay.

3.  Appellate counsel is ineffective when he fails to raise winning issues.

*Exhibit 23 to Return of Writ.*  On August 2, 2006, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

*Exhibit 25 to Return of Writ.*

Proceeding *pro se*, on December 23, 2005, and January 24, 2006, petitioner filed a post conviction petition in the state trial court.  He asserted the ineffective assistance of counsel due to his attorney's failure to call defense witnesses.  *Exhibits 26 and 27 to Return of Writ.* On January 24, 2006, the trial court dismissed the post conviction petition.  *Exhibit 29 to Return of Writ.*  Petitioner did not appeal.

On January 24, 2007, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1.  Petitioner's right to due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States of America was violated when the trial court sentenced petitioner to consecutive, non-minimum sentences based on facts not determined by a jury.

> 2.  Petitioner was denied the effective assistance of counsel, in violation of the Sixth and Fourteenth Amendments to the Constitution of the United States of America when appellate counsel failed to raise meritorious issues.

It is the position of the respondent that claim one is waived and claim two is without merit.

### CLAIM ONE:  FAIR PRESENTMENT; PROCEDURAL DEFAULT

In order to exhaust available state remedies, a petitioner must first fairly present the substance of his federal habeas corpus claims to the state courts.  *Picard v. Connor,* 404 U.S. 270, 275 (1971); *Anderson v.Harless,* 459 U.S. 4, 6 (1982). "The state courts must be provided

5

with a fair opportunity to apply controlling legal principles to the facts bearing upon petitioner's constitutional claims." *Sampson v. Love,* 782 F.2d 53, 55 (6th Cir.1986). Petitioner does not fairly present his claim simply because the necessary facts supporting a federal constitutional claim are present or because the constitutional claim appears self evident. *Haggins v. Warden,* 715 F.2d 1050, 1054 (6th Cir.1983)(citing *Harless,* 459 U.S. at 6). Furthermore, "[a] petitioner 'fairly presents' his claim to the state courts by citing a provision of the Constitution, federal decisions employing constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns." *Levine v. Torvik,* 986 F.2d 1506, 1515 (6th Cir.1993)(citing *Franklin v. Rose,* 811 F. 2d 322, 326 (6th Cir.1987)). Courts normally require more than a single broad generalization that petitioner was denied a "fair trial" or "due process of law." *Franklin,* 811 F.2d at 326; *Petrucelli v. Coombe,* 735 F.2d 684, 688 (6th Cir.1984). Petitioner, however, need not "cite book and verse on the federal constitution." *Picard,* 404 U.S. at 277 (quoting *Daugharty v. Gladden,* 257 F.2d 750, 758 (9th Cir.1960)). The Sixth Circuit has strictly followed the requirement that petitioner fairly presented his federal constitutional claims to the state courts as a precondition to federal habeas review. *Weaver v. Foltz,* 888 F.2d 1097, 1098 (6th Cir.1989).

In claim one, petitioner asserts that his sentence violates *Blakely v. Washington*, 542 U.S. 296 (2004). This claim is readily apparent from the record, and therefore should have been raised on direct appeal; however, petitioner argued on appeal solely that his sentence violated state law. *See Exhibits 8 and 16 to Return of Writ.* Petitioner did not refer to the federal Constitution or *Blakely,* which was decided on June 24, 2004, and long before

6

petitioner filed his direct appeal.  Petitioner likewise failed to cite any state cases relying on federal law.  The state appellate court therefore reviewed his claim for a violation of state law only.  *See Exhibits 10 and 18 to Return of Writ*.  Thus, petitioner failed fairly to present his *Blakely* claim to the state appellate court.

Petitioner has procedurally defaulted his *Blakely* claim by failing to raise the issue in the Ohio Court of Appeals.  In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration.  28 U.S.C. §2254(b), (c).  If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies.  *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) *(per curiam)*; *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).  If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error.  *Murray v. Carrier*, 447 U.S. 478, 485 (1986); *Engle v. Issac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  "First, the court must

7

determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall,* 757 F.2d 94 (6th Cir. 1985).

Petitioner did raise a claim under *Blakely* in the first instance on appeal to the Ohio Supreme Court. *See Exhibit 23 to Return of Writ.* As noted by respondent, the Ohio Supreme Court does not ordinarily consider claims not raised and addressed by the appellate court below. *See Mitts v. Bagley,* 2005 WL 2416929 (N.D .Ohio September 29, 2005)(habeas petitioner's failure to raise a claim in the Ohio Court of Appeals precludes review by the Ohio Supreme Court), citing *Fornash v. Marshall,* 686 F.2d 1179, 1185 n. 7 (6th Cir.1982)(citing *State v. Phillips,* 27 Ohio St.2d 294, 302 (1971)). However, the Ohio Supreme Court has considered *Blakely* claims raised for the first time on appeal in that court. *See, e.g., State of Ohio v. Scranton Buchanan,* 2006 WL 3059911 (Ohio App. 7 Dist. October 26, 2006), and cases cited therein ( "[I]t appears as if *Blakely* was raised for the first time to the Ohio

8

Supreme Court and yet the Court still reversed and remanded that case for re-sentencing pursuant to *Foster*.")

In any event, as cause for failing to raise a *Blakely* claim in the Ohio Court of Appeals, petitioner asserts the ineffective assistance of appellate counsel. *See Traverse.* This same issue is raised in claim two of this habeas corpus petition.

The ineffective assistance of counsel may constitute cause for a procedural default, *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000), citing *Murray v. Carrier,* 477 U.S. 478, 488-89 (1986), so long as such claim has been presented to the state courts and is not, itself, procedurally defaulted. *Edwards v. Carpenter, supra*, 529 U.S. at 452. Petitioner properly presented his ineffective assistance of appellate counsel claim on appeal to the Ohio Supreme Court. *See Exhibit 23 to Return of Writ; State v. Murnahan*, 63 Ohio St.3d 60 (1992)(holding that, under Ohio law, claims of ineffective assistance of appellate counsel may be raised in a Rule 26(B) application in the court of appeals or in a direct appeal to the Supreme Court).

For the reasons discussed, *infra,* this Court concludes that the claim is meritorious and therefore constitutes cause for petitioner's procedural default of claim one.

**INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL – CLAIM TWO**

Petitioner asserts that he was denied the effective assistance of appellate counsel because his attorney failed to raise on appeal a claim that his sentence violated *Blakely*. Because the Ohio Supreme Court did not address the merits of this claim but dismissed petitioner's appeal as not involving any substantial constitutional question, *see* Ohio

9

Supreme Court Rule of Practice III, Section 6,[1] this Court conducts a *de novo* review of this

---

[1] Ohio Supreme Court Rule of Practice III, Section 6 provides in relevant part:

Determination of jurisdiction by the Supreme Court

After the time for filing jurisdictional memoranda has passed, the Supreme Court will review the jurisdictional memoranda filed and determine whether to accept the appeal and decide the case on the merits...

(A) If the appeal is a claimed appeal of right, the Supreme Court will do one of the following:

(1) Dismiss the appeal as not involving any substantial constitutional question;

(2) Accept the appeal, and either order the case or limited issues in the case to be briefed and heard on the merits or enter judgment summarily.

(B) If the appeal is a discretionary appeal involving a felony, the Supreme Court will do one of the following:

(1) Deny leave to appeal, refusing jurisdiction to hear the case on the merits;

(2) Grant leave to appeal, accepting the appeal, and either order the case or limited issues in the case to be briefed and heard on the merits or enter judgment summarily.

(C) If the appeal is a discretionary appeal asserting a question of public or great general interest, the Supreme Court will do one of the following:

(1) Decline jurisdiction to decide the case on the merits;

(2) Grant jurisdiction to hear the case on the merits, accepting the appeal, and either order the case or limited issues in the case to be briefed and heard on the merits or enter judgment summarily.

claim.  *Hill v. Mitchell*, 400 F.3d 308, 313 (6th Cir. 2005), citing *Maples v. Stegall*, 340 F.3d 433,

436 (6th Cir. 2003).  Regardless, however, of whether this Court conducts a more deferential

standard of review under the AEDPA, *see id.*, that would not alter the outcome of this

Court's conclusions.

The right to counsel guaranteed by the Sixth Amendment is the right to the effective

assistance of counsel.  *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).  The standard

for demonstrating a claim of ineffective assistance of counsel is composed of two parts:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that deficient performance
> prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

*Strickland*, 466 U.S. at 687.  Scrutiny of defense counsel's performance must be "highly

deferential."  *Id.* at 689.

With respect to the first prong of the *Strickland* test, "[b]ecause of the difficulties

inherent in making the evaluation, a court must indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.*

To establish the second prong of the *Strickland* test, prejudice, a Petitioner must

demonstrate that there is a reasonable probability that, but for counsel's errors, the result

of the proceedings would have been different.  *Id.* at 694.  "A reasonable probability is a

probability sufficient to undermine confidence in the outcome."  *Id.*  Because Petitioner

must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, should the court determine that Petitioner has failed to satisfy one prong, it need not consider the other. *Id.* at 697.

The *Strickland* test applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776, 781-82 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). " '[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). *But see Smith v. Anderson*, 104 F. Supp. 2d 773, 839 (S.D. Ohio 2000) ("This Court believes that, in capital cases, appellate counsel should approach the traditional process of winnowing out claims with extreme caution."); *Jamison v. Collins*, 100 F. Supp. 2d 647, 740-41 (S.D. Ohio 2000) ("[W]e believe that any 'winnowing' or narrowing of issues must be done very cautiously when a person's life is at stake."). The Court of Appeals for the Sixth Circuit has identified the following considerations that ought to be taken into account in determining whether counsel on direct appeal performed reasonably competently:

1. Were the omitted issues "significant and obvious?"

2. Was there arguably contrary authority on the omitted issues?

3. Were the omitted issues clearly stronger than those presented?

4. Were the omitted issues objected to at trial?

5. Were the trial court's rulings subject to deference on appeal?

12

6. Did appellate counsel testify in a collateral proceeding as to his appeal strategy

and, if so, were the justifications reasonable?

7. What was appellate counsel's level of experience and expertise?

8. Did the Petitioner and appellate counsel meet and go over possible issues?

9. Is there evidence that counsel reviewed all the facts?

10. Were the omitted issues dealt with in other assignments of error?

11. Was the decision to omit an issue an unreasonable one which only an

incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999). This list is not exhaustive and need not

produce a certain "score." *Id.* at 428.

In *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348 (2000),

> the defendant pleaded guilty to second-degree possession of a
> firearm for an unlawful purpose, which carried a prison term
> of 5-to-10 years. Thereafter, the trial court found that his
> conduct had violated New Jersey's "hate crime" law because it
> was racially motivated, and imposed a 12- year sentence.

*United States v. Booker*, 543 U.S. 220, 230 (2005). The Supreme Court set aside the sentence,

holding:

> "Other than the fact of a prior conviction, any fact that
> increases the penalty for a crime beyond the prescribed
> statutory maximum must be submitted to a jury, and proved
> beyond a reasonable doubt."

*Id., citing Apprendi v. New Jersey, supra*, 530 U.S. at 490.

13

In *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), [the Supreme Court] reaffirmed... that the characterization of critical facts is constitutionally irrelevant. There, [the Supreme Court] held that it was impermissible for "the trial judge, sitting alone" to determine the presence or absence of the aggravating factors required by Arizona law for imposition of the death penalty. *Id.,* at 588-589, 122 S.Ct. 2428. "If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact--no matter how the State labels it--must be found by a jury beyond a reasonable doubt." *Id.,* at 602, 122 S.Ct. 2428. Our opinion made it clear that ultimately, while the procedural error in Ring's case might have been harmless because the necessary finding was implicit in the jury's guilty verdict, *id.,* at 609, n. 7, 122 S.Ct. 2428, "the characterization of a fact or circumstance as an 'element' or a 'sentencing factor' is not determinative of the question 'who decides,' judge or jury," *id.,* at 605, 122 S.Ct. 2428.

In *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531 (2004), we dealt with a determinate sentencing scheme similar to the Federal Sentencing Guidelines. There the defendant pleaded guilty to kidnaping, a class B felony punishable by a term of not more than 10 years. Other provisions of Washington law, comparable to the Federal Sentencing Guidelines, mandated a "standard" sentence of 49-to-53 months, unless the judge found aggravating facts justifying an exceptional sentence. Although the prosecutor recommended a sentence in the standard range, the judge found that the defendant had acted with " 'deliberate cruelty' " and sentenced him to 90 months. *Id.,* at ----, 124 S.Ct., at 2534.

For reasons explained in *Jones, Apprendi,* and *Ring,* the requirements of the Sixth Amendment were clear. The application of Washington's sentencing scheme violated the defendant's right to have the jury find the existence of " 'any particular fact' " that the law makes essential to his punishment. 542 U.S., at ----, 124 S.Ct., at 2536. That right is implicated whenever a judge seeks to impose a sentence that is not solely based on "facts reflected in the jury verdict or admitted by the defendant." *Id.,* at ----, 124 S.Ct., at 2537 (emphasis deleted). We rejected the State's argument that the

14

> jury verdict was sufficient to authorize a sentence within the general 10-year sentence for Class B felonies, noting that under Washington law, the judge was *required* to find additional facts in order to impose the greater 90-month sentence. Our precedents, we explained, make clear "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Ibid.* at ----, 124 S.Ct., at 2537 (emphasis in original). The determination that the defendant acted with deliberate cruelty, like the determination in *Apprendi* that the defendant acted with racial malice, increased the sentence that the defendant could have otherwise received. Since this fact was found by a judge using a preponderance of the evidence standard, the sentence violated Blakely's Sixth Amendment rights.

*Id.*, at 231-232. In *United States v. Booker, supra*, the Supreme Court struck the mandatory

provisions of the United States Sentencing Guidelines as unconstitutional under *Blakely*.

*Id.*, at 258-259.

The Ohio Supreme Court in *State v. Foster, supra*, has similarly stricken portions of

Ohio's sentencing statutes as constitutionally prohibited under *Blakely*:

> Certain aspects of Ohio's felony sentencing plan are unconstitutional when measured against the Sixth Amendment principles established in *Blakely*. The reason for this is, like many state legislatures that attempted sentencing reform, the Ohio General Assembly, through its enactment of S.B. 2 in 1996, authorized narrower sentencing ranges and restricted the discretion of trial judges by *mandating* that underlying "findings" be made before increasing what seems to be a presumptive sentence. In other words, the sentence is not determined "solely on the basis of facts reflected in the jury verdict or admitted by the defendant" as *Blakely* requires. (Emphasis omitted.) Id., 542 U.S. at 303, 124 S.Ct. 2531, 159 L.Ed.2d 403.

15

***

Ohio's sentencing statutes offend the constitutional principles announced in *Blakely* in four areas. As was reaffirmed by the Supreme Court in *Booker*, "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.*, 543 U.S. at 244, 125 S.Ct. 738, 160 L.Ed.2d 621.

Because R.C. 2929.14(B) and (C) and 2929.19(B)(2) require judicial factfinding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant, they are unconstitutional. Because R.C. 2929.14(E)(4) and 2929.41(A) require judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant before imposition of consecutive sentences, they are unconstitutional. Because R.C. 2929.14(D)(2)(b) and (D)(3)(b) require judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant, before repeat violent offender and major drug offender penalty enhancements are imposed, they are unconstitutional. *Apprendi*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435; *Blakely*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403.

*State v. Foster, supra*, 109 Ohio St.3d at 19-25.  The Ohio Supreme Court excised the

unconstitutional provisions of its sentencing statutes in accordance with the Supreme

Court's remedial action in *United States v. Booker*, 543 U.S. 234, 764 (2005)(severing and

excising unconstitutional provisions of United States Sentencing Guidelines rather than

invalidating sentencing guidelines in their entirety).

We therefore hold that R.C. 2929.14(B) and (C) and 2929.19(B)(2) are capable of being severed. After the severance, judicial factfinding is not required before a prison term may be

16

imposed within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant. We further hold that R.C. 2929.14(E)(4) and 2929.41(A) are capable of being severed. After the severance, judicial factfinding is not required before imposition of consecutive prison terms. Finally, we hold that R.C. 2929.14(D)(2) and (3) are capable of being severed. After the severance, judicial factfinding is not required before imposition of additional penalties for repeat violent offender and major drug offender specifications. The appellate statute R.C. 2953.08(G), insofar as it refers to the severed sections, no longer applies.

Accordingly, we have concluded that trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences.

*State v. Foster, supra* 109 Ohio St.3d at 29-30.  The Ohio Supreme Court further held:

These cases and those pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent with this opinion.

*Id.,* at 31.

Here, petitioner was sentenced to maximum consecutive terms of incarceration on all four of his fourth degree felony convictions. *See State v. Thompson, supra*, 2005 WL 3489781; *Exhibits 6, 10, 14, and 18 to Return of Writ*.  The trial court justified imposition of maximum consecutive terms as follows:

I am going to find that community control sanctions would not be appropriate in your case as they would demean the seriousness of the offense and would not adequately punish you or protect the public.  Therefore, I'm not going to impose

17

community control sanctions.  I'm going to impose a prison sentence.

The factors I have to consider in each of these cases are whether or not there was any injury to the victim, whether there was any serious physical or psychological, economic harm.  In your case there was economic harm caused both to Ms. Billingsly, whose car was the subject of the receiving stolen property charge you were found guilty of in case number 04 CR 210.  She said she had an $80.00 towing bill that she was required to pay.  And in 05 CR 04, I do not know the extent of the damage [to] the vehicle taken from Mrs. Barrett.  However, the other lady who was here whose car got hit when you backed up into it, Ms. Sizemore I think her name was, said she had like $3,000.00 worth of damage.  So you have caused some serious economic harm in both of these cases.

As far as any of the factors indicating your crime to be less serious than any other crimes of this nature, I don't see [that] any of those factors apply.

As to the recidivism factors, whether or not you would be more likely, I do find that while you were on bail on this charge of 04 CR 210 which happened on September 25th 2004, you committed the other offense of grand theft of a motor vehicle on December 24th of 2004.  Therefore, recidivism is likely because you committed a crime while you were on bail waiting trial on another crime.

Further, you do have a history of criminal convictions which has been recited to the Court both by the Prosecutor and by yourself as far as your prison sentence in Pennsylvania for the four years that you served there.

I also find that you have not responded favorably to previous sanctions because even though those other sanctions were imposed upon you and you had several cases reduced to misdemeanors in Municipal court and you were either fined or

given days in jail, even after that you committed these offenses.

I find that you have not shown to me any remorse for the offenses that have been committed.

When I look at the recidivism less likely factors, I don't find that any of those factors apply to you.

As has already been noted in case number 04 CR 210, the possession of crack cocaine, Count Number One that you were found guilty of, a felony of the fourth degree, is an in-favor drug offense, meaning that there is a presumption in favor of prison for that offense.

I find that presumption has not been rebutted because I find that a non prison sentence would not adequately protect the public and punish you and it would demean the seriousness of the offense.  And therefore, I find that that presumption has not been rebutted.

All the other charges, which is carrying concealed weapon and receiving stolen property, case number 04 CR 21, being felonies of the fourth degree, are as noted by your counsel, Division B offenses.  And the theft, grand theft of a motor vehicle in case number 05 CR 04 is also a Division B offense.

I find that in 05 CR 04 there was not physical harm caused to a person, however there was an actual threat of physical harm by the manner in which you drove off in the vehicle and with the owner of the vehicle trying to stop you, grabbing the side of the vehicle and hitting on the vehicle there was a threat of physical harm to her because you continued to drive.  There was also a threat of physical harm to Ms. Sizemore who was standing by her car and had to jump out of the way when she saw the car you were driving coming at her.

I also find that you have served a prior prison term.  Therefore,

I find those factors weigh in favor of a prison sentence.

As far as whether or not the shortest or longest term should be imposed upon you, I find that the factors requiring the shortest term do not apply to you because you have served a prior prison term and it would demean the seriousness of the offense to impose the shortest sentences.

As far as whether you are eligible for the longest term of those offenses, I am going to find that you do pose a great likelihood of committing future crimes because of the extensive record that you have both in Municipal Court, the fact you have already served a prison term of four years, the fact that one of these crimes was also committed while you were out on bail on another crime.  Therefore, you are eligible to receive the longest terms.

I am going to further find that consecutive terms which are optional are necessary to punish you and are not disproportionate.

And I further find that crime in case number 05 CR 04 as I stated previously was committed while you were awaiting trial on another charge.

I further find that your criminal history shows that consecutive terms are necessary in order to protect the public.

Therefore, I am going to sentence you in 04 CR 210 to the longest terms.  That is on Count Number One I am going to sentence you to eighteen months which is possession of crack cocaine, a felony of the fourth degree.

On Count Two I'm going to sentence you to the longest term which is eighteen months, which is carrying a concealed weapon, felony of the fourth degree and that eighteen months will be consecutive to the eighteen months I sentence you to on

Count One.

On Count Three I am going to sentence you to the longest term which is eighteen months. On Count Three which is receiving stolen property, a felony of the fourth degree that eighteen months will be consecutive to the eighteen months that I gave you on Count Two and consecutive to the eighteen months I gave you on Count One.

So you will have three eighteen month sentences which are consecutive with each other on 04 CR 210 for a total of 54 months in prison.

In case 05 CR 04... grand theft of motor vehicle, a felony of the fourth degree, I am also going to sentence you to the longest term on that as well. That's a term of eighteen months. And that eighteen month term will be consecutive to the terms that I have imposed upon you in case number 04 CR 210.

So... you will have... a total of 72 months which is six years in prison.

*Transcript, Exhibit 31 to Return of Writ*, at 217-222. Thus, the record indicates trial court justified imposition of maximum consecutive sentences based upon findings of fact in addition to petitioner's prior record that were neither admitted by petitioner nor reflected by the jury's verdict. *See also Exhibit 6* (*Judgment Entry of Sentence*); *Exhibits 10 and 18* (for the appellate court decisions affirming trial court's imposition of maximum consecutive sentences).

For the reasons detailed at length by the Ohio Supreme Court in *State v. Foster, supra*, this Court agrees that the trial court's imposition of maximum and consecutive sentences

21

under O.R.C. §2929.14(E), (C) violated *Blakely*.  As discussed by the Ohio Supreme Court

in *State v. Foster, supra,*

> R.C. 2929.14(C), which states that "*the court* imposing a
> sentence upon an offender for a felony *may impose the longest
> prison term* authorized for the offense pursuant to division (A)
> of this section *only* upon offenders who committed the worst
> forms of the offense, upon offenders who pose the greatest
> likelihood of committing future crimes, upon certain major
> drug offenders under division (D)(3) of this section, and upon
> certain repeat violent offenders in accordance with division
> (D)(2) of this section." (Emphasis added.)

> Although this statute does not use the word "findings," our
> holdings in *State v. Edmonson,* 86 Ohio St.3d at 329, 715 N.E.2d
> 131, and *State v. Evans,* 102 Ohio St.3d 240, 2004-Ohio-2659, 809
> N.E.2d 11, recognize that R.C. 2929.14(C) is mandatory and
> prohibits maximum sentences unless the required findings of
> fact are made beforehand....

> We have consistently held that R.C. 2929.14(C) requires that
> specific findings be made before a maximum sentence is
> authorized. *Evans,* 102 Ohio St.3d 240, 2004-Ohio-2659, 809
> N.E.2d 11, at ¶ 15; *Edmonson,* 86 Ohio St.3d at 325, 715 N.E.2d
> 131. As it stands, R.C. 2929.14(C) creates a presumption to be
> overcome only by judicial fact-finding. It does not comply with
> *Blakely.*

> Consecutive Prison Terms

> ...R.C. 2929.14(E)(4) requires the court to find that "the
> consecutive service is necessary to protect the public from
> future crime or to punish the offender and that consecutive
> sentences are not disproportionate to the seriousness of the
> offender's conduct and to the danger the offender poses to the
> public." In addition, at least one of three more findings of fact
> must be found: that the offender was already under control of
> the court due to an earlier conviction,[FN83] that at least two of the

offenses were committed as part of a course of conduct and the harm was so great or unusual that no single prison term adequately reflects the seriousness of the conduct, [FN84] or that "[t]he offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public." [FN85]

FN83. R.C. 2929.14(E)(4)(a).

FN84. R.C. 2929.14(E)(4)(b).

FN85. R.C. 2929.14(E)(4)(c).

While other state courts have held that their statutes on consecutive sentences do not violate *Blakely*... Ohio appears to be unique in having a rule that sentences of imprisonment shall be served concurrently. See R.C. 2929.41(A); *State v. Barnhouse*, 102 Ohio St.3d 221, 2004-Ohio-2492, 808 N.E.2d 874, at ¶ 11. R.C. 2929.41(A) states, " *Except as provided in* division (B) of this section, *division (E) of section 2929.14,* or division (D) or (E) of section 2971.03 of the Revised Code, *a prison term,* jail term, or sentence of imprisonment *shall be served concurrently* with any other prison term." (Emphasis added.) Thus, except for certain enumerated statutes imposing nondiscretionary consecutive terms,[FN87] judicial fact-finding must occur before consecutive sentences may be imposed under R.C. 2929.14(E)(4). We have held previously that R.C. 2929.14(E)(4) and 2929.19(B)(2)(c) require trial courts that impose consecutive sentences to make the statutorily enumerated findings and to give reasons at the sentencing hearing to support those findings for review on appeal. *State v. Comer,* 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473.

***

FN87. R.C. 2929.14(E)(1) through (3).

Thus, with limited exceptions, the Ohio Revised Code provides that consecutive sentences in Ohio may not be imposed except after additional fact-finding by the judge.... [B]ecause the total

23

> punishment increases through consecutive sentences only after
> judicial findings beyond those determined by a jury or
> stipulated to by a defendant, R.C. 2929.14(E)(4) violates
> principles announced in *Blakely*.

*State v. Foster, supra*, 109 Ohio St.3d at 21-22 (footnote omitted).

Despite the meritoriousness of petitioner's *Blakely* claim, respondent nonetheless contends appellate counsel's failure to raise the claim on appeal was a constitutionally reasonable strategic decision.  Respondent argues that application of *Blakely* to Ohio's sentencing statutes was uncertain at the time appellate counsel filed petitioner's appeal, and the Ohio Supreme Court did not decide in *State v. Foster*, 109 Ohio St.3d 1 (2006),  that portions of Ohio's sentencing statutes violated *Blakely* until February 27, 2006, after the appellate court had affirmed petitioner's convictions and sentence.  Respondent also contends that appellate counsel was not required to anticipate the Ohio Supreme Court's ruling in *State v. Foster.  Return of Writ, at 23.*  None of these arguments are persuasive.

The trial court sentenced petitioner in both criminal cases on April 7, 2005, and in a judgment entry filed on April 12, 2005, long after the United States Supreme Court's June 24, 2004, decision in *Blakely*.  Counsel acted unreasonably in ignoring the *Blakely* decision, which had obvious potential implications on the constitutionality of Ohio's sentencing scheme and on the sentence actually imposed in this case, particularly where she asserted on appeal a claim that the trial court acted unreasonably in imposing maximum and consecutive sentences.  Further, no strategic reason could have supported counsel's failure. Petitioner ran no risk of any increase in his sentence if he succeeded on his *Blakely* claim,

because he had already received the maximum sentence. *State v. Foster, supra*, established petitioner's prejudice. Although "a later change in the law will not render an attorney's earlier performance deficient," *Nichols v. United States*, 501 F.3d 542, 545 (6ᵗʰ Cir. 2007), citing *Lucas v. O'Dea,* 179 F.3d 412, 420 (6th Cir.1999); *Alcorn v. Smith*, 781 F.2d 58, 62 (6th Cir.1986), an exception to this general rule "can arise when counsel "fail[s] to raise an issue whose resolution is clearly foreshadowed by existing decisions." *Id*. Such are the circumstances here. *See id.*, at 546-547, distinguishing *United States v. Burgess,* 142 Fed.Appx. 232 (6ᵗʰ Cir. June 22, 2005)(holding that an attorney's failure to predict *United States v. Booker,* 543 U.S. 220 (2005), did not constitute ineffective assistance of counsel), on the basis that Burgess' sentence did not raise any due process or Sixth Amendment concerns that precipitated *Blakely. See United States v. Burgess, supra*. Moreover, *Blakely* had been decided long before petitioner's direct appeal, and appellate counsel therefore was not required to anticipate the decision to raise it in petitioner's appellate brief.

Therefore, the Court concludes that petitioner has established the ineffective assistance of counsel as cause for his procedural default of claim one, and that claim one and claim two are meritorious.

Petitioner also contends that application of *State v. Foster, supra*, to him violates the Ex Post Facto Clause, because its remedy disadvantages criminal defendants since Ohio courts now may impose any sentence within the statutory maximum for the offense of conviction without making any additional factual findings and because *Foster* effectively forecloses appellate review of a criminal defendant's sentence. *Traverse*, at 20. Petitioner

25

therefore requests the Court to remand his case to the state trial court with an order that he may not be sentenced beyond minimum concurrent prison terms for his offenses of conviction. *Id.*, at 23.

As previously discussed, however, petitioner did not raise any claim in the State Court of Appeals regarding application of the Ex Post Facto Clause to *State v. Foster, supra*. He first raised this claim before the Ohio Supreme Court. Therefore, it does not appear that petitioner's Ex Post Facto claim is properly before this Court. *See Maupin v. Smith, supra*. Further, the claim is premature. The state trial court has not re-sentenced petitioner, and petitioner cannot now demonstrate that any sentence imposed may violate the Ex Post Facto Clause.

Therefore, for all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus conditionally be **GRANTED**, that petitioner's sentence be **VACATED**, and that he be released from incarceration unless the State of Ohio reinstates his appeal within sixty (60) days.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this

26

Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge

27